MICHAEL M. BARANOV - Bar No. 145137
BARANOV & WITTENBERG, LLP
1901 Avenue of the Stars, Suite 1750
Los Angeles, California 90067-6056
Tel: (310) 229-3500; Fax: (310) 229-3501
Email: mbaranov@mbgwlaw.com

Attorneys for Plaintiff, NANCY SHY, as an Individual and
Successor in Interest to Decedent, KUDURA BATISTE

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY SHY, as an Individual and Successor in Interest to Decedent KUDURA BATISTE,<br><br>Plaintiff,<br><br>-vs-<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **DEPENDENT ADULT ABUSE & NEGLECT [W&I sections 15600, *et.seq.*]**<br>2. **MEDICAL MALPRACTICE**<br>3. **FRAUD (CONCEALMENT)**<br>4. **CONSTRUCTIVE FRAUD**<br>5. **WRONGFUL DEATH**<br><br>**DEMAND FOR TRIAL BY JURY** |

COMES NOW, plaintiff, NANCY SHY, as an individual and successor in interest to decedent KUDURA BATISTE and for causes of action against defendants, and each of them, alleges as follows:

## COMMON ALLEGATIONS

1.    Plaintiff NANCY SHY ("SHY") is the mother, heir and successor in interest of decedent KUDURA BATISTE ("BATISTE" or "Decedent"), and brings her son's action in a representative capacity.  SHY also brings an action on behalf of herself, as an individual, for the wrongful death of her son, pursuant to California Code of Civil Procedure Section 377.60.  SHY

—

1   has complied with the provisions of California Code of Civil Procedure Section 377.32. SHY is

2   the heir of Decedent and is entitled to bring this action pursuant to Section 377(a) of the Code of

3   Civil Procedure. At all relevant times, SHY resided in the County of Los Angeles, California.

4       2.    SHY was at all relevant times a court-appointed Conservator of BATISTE, duly

5   appointed by the Superior Court of California, County of Los Angeles, and had the authority

6   including but not limited to, place BATISTE into a medical or psychiatric nursing facility

7   whereat BATISTE did not have free access into or out of the premises.

8       3.    The decedent, BATISTE, was thirty-eight (38) years old, and was an individual

9   who resided at La Casa Mental Health Rehabilitation Center in the city of Long Beach, County

10  of Los Angeles, State of California, at the time of his untimely death on December 5, 2011.

11      4.    The United States Attorney for the Central District of California has certified that

12  pursuant to the Fedearlly Supported Health Centers Assitantce Act of 1992, 42 U.S.C. §233(g),

13  DELIA G. CABANSAG, M.D., ("CABANSAG") and MARIA LIN, P.A ("LIN") are employees

14  of a public or nonprofit private entity receiving Federal funds under Sections 254b, 254c, 256

15  and/or 256a of the Public Health Services Act and are therefore deemed to have been acting

16  within the course and scope of employment with the Public Health Service of the Unitied States

17  at all times material to the allegations set forth in this complaint. Attached as Exhibit "A" is a

18  true and correct copy of the Certification of United States Attorney Andre Birotte, Jr.

19      5.    Plaintiff timely served defendant with a Notice of Intent to Commence Legal

20  Action, in compliance with Section 364 of the California Code of Civil Procedure. Defendant

21  also timely served a Claim for Injury, Damages or Death with the United States Department of

22  Health and Human Services on June 13, 2014, after CABANSAG and LIN were certified as

23  agents of defendant on April 11, 2014. Defendant served a notice of denial of claim on

24  September 22, 2014.

25      6.    CABANSAG and LIN are individuals engaged in the practice of medicine,

26  physician assistant, supervising physician, psychology, psychotherapy, psychological assessment

27  and as physicians, surgeons, psychologists, psychotherapists, marriage and family therapists,

28  clinical social workers, other mental health care and health care professionals, nurse

**COMPLAINT FOR DAMAGES**    2

practitioners, registered nurses and specialists and professional medical corporations and at all times herein mentioned, practiced such profession in the County of Los Angeles, State of California and held themselves out to be competent to render medical, psychiatric, psychological, nursing, and inpatient care and as care custodians, were subject to the requirements of State, County and City law and at all times were agents of defendant.

7.     During all times herein mentioned, CABANSAG and LIN held themselves out to be competent to render medical, surgical, nursing, psychiatric, psychological, psychotherapeutic, psychological assessment, acute mental health care and rehabilitation, nursing, mental health care  and health care and assessment and hospital care for compensation; that all acts complained of by the plaintiff herein against said defendants and individuals, were done and performed by them by and through their duly organized agents, servants and employees, each of whom had a duty of care to the Decedent, while he was a patient of said defendants and named individuals.

8.     Plaintiff is informed and believes and based thereon alleges that at all times herein relevant, defendant authorized and ratified the conduct of their employees and agents and each of them, including that of CABANSAG and LIN.

9.     Plaintiff is informed and believes and thereon alleges that defendant had knowledge of and condoned the lack of care, absence of attention, and failure to properly treat the Decedent.

10.     All of the defendant's conduct, as alleged herein, was carried out by a managing agent, and/or by an officer and/or director of defendant, including by CABANSAG and LIN.  A managing agent, officer, and/or director of defendant had advance knowledge of the unfitness of its decision-makers and care providers and employed them with a conscious disregard of the rights and safety of their residents, including Decedent, and authorized their conduct in advance, and ratified their conduct after it occurred, including that by CABANSAG and LIN.

11.     All of the facts, acts, events and circumstances herein mentioned and described occurred in the County of Los Angeles, State of California.

12.     This court has jurisdiction over the subject matter of this complaint under:

**COMPLAINT FOR DAMAGES**                      3

a.      18 U.S.C. § 2712 in that this is a civil action against the United States of America;

b.      28 U.S.C. § 1367 concerning supplemental jurisdiction.

13.     Venue lies in this jurisdiction pursuant to 28 U.S.C. § 1391.

14.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein mentioned, defendant, when acting as a principal, was negligent in the selection and hiring of CABANSAG and LIN,  as its agents, servants or employees.

15.     At all times relevant herein, BATISTE was under the exclusive control of the defendant, CABANSAG, LIN, their agents  and that at no time prior to the events, conduct, activities, care and treatment herein complained of did the defendant, CABANSAG and LIN, or their agents herein, or any of them, obtain knowledgeable, informed consent for said care, treatment or conduct; that prior to the initiation of or performance of said care, treatment or conduct, no opportunity was afforded to BATISTE or plaintiff, or any other authorized agent of BATISTE or plaintiff, to exercise voluntary, knowledgeable and informed consent to said care, treatment, procedure or conduct.

16.     In or about 1992, the then 20 year old Decedent was diagnosed with Schizo-Affective Disorder.  During the next several years, he was hospitalized multiple times as a consequence of his mental illness and substance abuse.  He lived at a variety of board and care facilities and was also homeless over the years.  In or about July, 2010, Decedent was involuntarily hospitalized at Olive View Medical Center pursuant to section 5150 of the California *Welfare & Institutions Code* pursuant to a psychiatric assessment whereby he was adjudged to be gravely disabled and a danger to himself.

17.     In order to protect her mentally ill son and insure his safety and rehabilitation, on or about July 21, 2010, Decedent BATISTE was entrusted to LA CASA MENTAL HEALTH REHABILITATION CENTER ("LA CASA"), licensed by the County of Los Angeles as a Mental Health Rehabilitation Center and located in Long Beach, California, an inpatient 24-hour locked down mental health facility, pursuant to plaintiff's authority as his court appointed Conservator for the purpose of obtaining mental health, medical, nursing and rehabilitation

1   inpatient treatment and care.  Plaintiff agreed to entrust her son, BATISTE to defendant's

2   custody based on their representation that they were competent and that said facility was

3   properly staffed and funded, which would provide appropriate care to her mentally ill son.

4         18.     At the time of his admittance to LA CASA, BATISTE was six foot one inch in

5   height and weighed 210 pounds.  LA CASA personnel noted that BATISTE was slightly

6   overweight at that time and he was placed on a 2000 calorie per day diet and allegedly was

7   monitored.  On January 13, 2011, BATISTE's weight increased to 217 pounds.  On April 13,

8   2011, BATISTE's weight was recorded at 222 pounds.  On July 14, 2011, BATISTE's weight

9   was recorded at 245 pounds and by October 12, 2011, BATISTE's recorded weight had

10   increased to 264 pounds.

11         19.     Throughout his stay at LA CASA, as a consequence of the mental illness for

12   which he was admitted thereto, Decedent did not have the necessary skills and insight to manage

13   himself independently, nor the ability to formulate a plan to manage his mental illness or any

14   medical issues that might arise and he therefore was beholden to defendant, and its agents,

15   CABANSAG and LIN, to receive appropriate medical and mental health care.  During the entire

16   course of his stay at LA CASA from admittance until just prior to his death, BATISTE was

17   assessed by LA CASA mental health personnel including by LIN and CABANSAG as having

18   "serious" or "gross" impairment  in his ability to function, communicate and in his judgment due

19   to the mental illness for which he was placed in defendants' care.  BATISTE at all relevant times

20   was a dependent adult in the care and custody of the Defendant, and its agents, CABANSAG and

21   LIN, and each of them as defined by California law.

22         20.     On or about December 2, 2011, LA CASA observed that BATISTE's neck was

23   swollen.  He was not provided any medical treatment, care nor was he properly evaluated or

24   assessed by medical or nursing personnel.

25         21.     In the morning or early afternoon of December 5, 2011, and/or prior thereto,

26   Batiste was again observed by LA CASA, including its nursing staff in his room with a swollen

27   neck.  Decedent complained of ear pain and difficulty swallowing.  He had refused both

28   breakfast and lunch.  LA CASA's nursing staff notified CABANSAG and LIN,  through its

**COMPLAINT FOR DAMAGES**                    5

agent in the morning or early afternoon of December 5, 2011 or earlier of Decedent's medical condition.  Notwithstanding, neither LIN nor CABANSAG, properly assessed, evaluated, examined, treated or cared for BATISTE until plaintiff contacted defendant, and its agents CABANSAG and LIN, that she spoke to decedent on the telephone and that he seemed to be in medical distress and his voice was unrecocognizable and demanded her son be seen by a physician.

22.     At or about 7:00 p.m. on December 5, 2011, plaintiff contacted the nurses station at LA CASA, and informed a nurse that she had just attempted to speak to her son but could barely recognize his voice or understand him and that he appeared to be in distress.  Plaintiff expressed urgent concern about the health and welfare of her son.  The nurse assured plaintiff that BATISTE was merely congested and otherwise fine. Plaintiff demanded that her son, BATISTE, immediately be seen by a physician.

23.     Notwithstanding defendant's knowledge of BATISTE's condition, they failed to follow up with any health care assessment or medical care or treatment to BATISTE and his condition worsened.

24.     At or about 7:40 p.m. defendant, through its agent MARIA LIN, P.A. gave an order to have Decedent transferred to a hospital.  The ambulance was called at or about 8:00 p.m. and arrived at 8:20 p.m., at which time Decedent was in respiratory distress.  911 was then called.  Paramedics arrived at or about 8:38 p.m. and Decedent was transported to Lakewood Regional Medical Center where he was pronounced dead at 9:24 p.m. on December 5, 2011.

25.     At the time of his death on December 5, 2011, Decedent weighed 268 pounds.  In less than one year while under defendants' care, BATISTE gained more than 50 pounds.  In addition, three months prior to his death, Decedent was diagnosed with diabetes.  The weight gain and the resulting diabetes had occurred due to defendants' failure to supervise the diet of its dependent adult and because defendants provided its dependent adult unfettered access to snacks and junk food for extended hours during each day.  Prior to Decedent's death, and unbeknownst to plaintiff, defendants were cited by the Department of Health for failure to provide proper nutrition to their dependent adults.

**FIRST CAUSE OF ACTION**

**FOR DEPENDENT ADULT ABUSE (NEGLECT)**

**(By Plaintiff's Decedent Against Defendant)**

26.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 25 inclusive, as though fully set forth herein.

27.     At all relevant times, defendants had the care and custody of Decedent, inasmuch as defendants were providing inpatient mental health care and custodial services to him, within a psychiatric health facility and mental health rehabilitation center for dependent adults.

28.     By virtue of the foregoing, defendants and each of them owed a duty of ordinary care to BATISTE, including the duty to monitor his health and medical conditions, provide good nutrition, ensure that he was provided with diets as prescribed by physicians,  necessary and reasonable medical care, proper monitoring of his weight (including notification to the dependent adult's physician of weight gain of more than 5 pounds in any given month) including pursuant to Title 9, Chapter 3.5 of the California Code of Regulations, sections 785 et seq.

29.     At times relevant herein, Decedent was a dependent adult under the meaning of the California *Welfare & Institutions Code* Section 15610.23.  Because defendant had assumed the care of mentally ill and disabled adults, like BATISTE, while he was in LA CASA, a lock down facility, defendants also knew that there was a high probability that great bodily harm or even death would occur to their residents if defendants failed in their duties to ensure that basic needs for health, safety, nutrition and protection were being met, because such residents were all vulnerable, infirm, and/or disabled persons who were dependent upon defendants to monitor, assess and protect mentally ill and disabled adults, including Decedent.

30.     Defendant had the affirmative legal duty towards Decedent not to willfully cause, and to not willfully permit, his health, safety, or welfare to be endangered by anyone, and to not create, or place him into, circumstances that a reasonable person should know would cause his health, safety, or welfare to be endangered.  Each defendant knew that Decedent was gravely disabled, and that defendants had a special relationship with him under these circumstances, and under the law.

**COMPLAINT FOR DAMAGES**                    7

31.     On or about December 5, 2011, and prior thereto, Defendant failed and refused to provide medical care and to properly assess the Decedent, to provide proper nutrition to Decedent, or to protect him from health and safety hazards or mental suffering, and neglected, abandoned, isolated and mistreated Decedent with resulting physical harm, pain, mental suffering and death.

32.     Defendant's agents CABANSAG and LIN were unfit to perform the duties for which they were employed by defendant, which duties included treatment, care and assessment of its clients, including Decedent.

33.     Defendant had advance knowledge of their employees' and/or agents' unfitness to perform the duties for which they were employed and continued to employee said employees with a conscious disregard of the rights or safety of others, including Decedent.  Said unfitness was a proximate cause of Decedent's demise.

34.     As a direct and legal result of defendant's failure to monitor and supervise Decedent, he gained nearly 60 pounds while in defendants' care and developed diabetes.  He also suffered from a swollen neck and difficulty swallowing for at least three days during which defendants and each of them failed and refused to provide decedent with medical assessment or treatment.  All of the above failures caused severe injuries, pain, emotional distress and mental suffering up and until the time of his death on December 5, 2011 which in fact was caused by defendant's and their agents delay, refusal and / or failure to provide adequate or timely medical care and assessment.

35.     Decedent's severe weight gain, development of a serious, permanent, incurable and life threatening disease, namely diabetes, and eventual death from suffocation, after no less than three days of notice of such condition, were not isolated events, as defendants were cited for failure to provide proper nutrition to their residents and had at least two patients cause harm to themselves due to their failure to provide a safe environment and proper supervision.

36.     Defendants' conduct, as set forth above, constitutes a denial of care and "neglect" under *Welfare & Institutions Code* Section 15610.57.  Under the circumstances alleged, the acts amounting (singly or in the aggregate) to "neglect" were carried out in conscious disregard of the

probability of injury to BATISTE, subjected BATISTE to unjust hardship in conscious disregard of his rights and safety, and were despicable, particularly given his dependence on defendants and the express duties assumed by the defendants, and each of them, under law to Decedent. Accordingly, each defendant has acted with recklessness, malice and oppression, and their conduct amounts to Dependant Adult Abuse under *Welfare & Institutions Code* Section 15600 *et seq.*

37.     As a direct and legal result of defendants' violation of the *Elder Abuse and Dependent Adult Civil Protection Act, Welfare & Institutions Code* Section 15600 *et. seq.,* Decedent suffered unjustifiable and substantial physical pain*I*and mental suffering, mental anguish and serious emotional and physical distress, entitling plaintiff's Decedent to general damages in an amount to be proven at trial.

38.     Defendant acted with recklessness, malice, fraud and/or oppression for purposes of *Welfare & Institutions Code* Section 15657, and had advance knowledge of the unfitness of the employees and employed the employees with a conscious disregard of the rights or safety of others, including Decedent, or authorized or ratified the wrongful conduct thereby entitleing plaingiff to recover the remedies set forth by such statute, including attorney's fees and costs.  As a legal and proximate result of defendant's conduct, plaintiff has incurred and will continue to incur attorney's fees and related expenses in an amount to be proven at trial.

39.     The above-described conduct by defendants constitutes malice and oppression, as those terms are defined by *Civil Code* Section 3294, and punitive damages should be assessed against defendants and each of them according to proof.

## SECOND CAUSE OF ACTION FOR MEDICAL MALPRACTICE
### (By Plaintiff Against Defendant)

40.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39 inclusive, as though fully set forth herein.

41.     From and after the time of their employment, defendants and each of them negligently failed to exercise the proper degree of knowledge and skill in examining, diagnosing,

treating, assessing and caring for BATISTE, so that BATISTE was caused to and did suffer the injuries and damages herein alleged and caused his death.

42.     That during said period while BATISTE was under the care, management and control of defendants, and each of them, said defendants, negligently, carelessly and without skill, rendered said services, treatment, attention and care in a negligent and careless manner, in violation of the standards practiced in such cases; and by reason of said negligent acts, omissions, and conduct, BATISTE suffered prior to his death and, died on or about December 5, 2011, at the age of thirty-eight (38).  That said acts, omissions and conduct of said defendants, and each of them, was negligence, known as malpractice, and was the cause of the Decedent's suffering and death.

43.     At and prior to the time of Decedent's death, plaintiff, who is the heir of decedent, enjoyed decedent's society, solace, comfort, consortium, attention, services and friendship, love and support.  At all times prior to his death, Decedent was a faithful, loving and dutiful son.

44.     As a proximate result of the negligence of defendants, and each of them as herein alleged, plaintiff herein, who is an heir of Decedent, has been deprived of Decedent's society, comfort, solace, support, attention, services, love and friendship and has been damaged in an amount which has not yet been ascertained.

45.     As a further result of the negligence of the defendants, and each of them, as alleged herein, and the death of Decedent, plaintiff has incurred funeral and burial expenses in an amount not yet ascertained.

46.     As a further result of the negligence of the defendants, and each of them, as herein alleged, and of the death of the Decedent, the Decedent and plaintiff incurred expenses prior to the Decedent's death for medical treatment and related expenses, all to their further damage, in an amount according to proof at the time of trial.

/ / /

/ / /

/ / /

**COMPLAINT FOR DAMAGES**                    10

### THIRD CAUSE OF ACTION FOR FRAUD - CONCEALMENT

**(By Plaintiff Against Defendant)**

47.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39 inclusive, as though fully set forth herein.

48.     At all relevant times herein, defendants were trusted with the health, safety, and care of BATISTE, and accepted such trust and confidence.  Defendants were aware that at all relevant times that SHY was the court appointed conservator of Decedent.  Accordingly, a confidential relationship in fact existed and defendants therefore owed to BATISTE and SHY a fiduciary duty of utmost good faith and fair dealing.

49.     Once BATISTE became a resident of LA CASA and was entrusted to defendant's and its agents' care, and thereafter during his continued residence at LA CASA, while under defendant's care, defendants had a duty to make certain disclosures of fact to SHY, but with the intent to deceive SHY, defendants concealed such matters of fact from her.  Defendants, by and through their agents CABANSAG and LIN, concealed that Decedent was not receiving proper nutrition and proper medical care, that defendants did not have a system in place to check or monitor residents for care or to provide the particular services required by residents, including monitoring weight, nutrition and medical assessment and care of its dependent adults. Defendants also concealed that they were not and would not be following regulations requiring the monitoring, observation of BATISTE's nutritional intake and not following California regulations to monitor and notify BATISTE's physician of weight gain or provide proper assistance to residents; that they would not ensure that BATISTE received proper nutrition; that they were not and would not follow policies and procedures to observe and monitor residents for changes in physical, mental, emotional and social functioning; and that they would not provide Decedent with necessary medical care, resulting in his death.

50.     At the time SHY made the decision to place Decedent at LA CASA and entrust him into defendants' care, and thereafter during the continued residence of Decedent while under defendants' care, defendants also knew and intentionally concealed from SHY that the facility has been cited by regulatory authorities, that there was a shortage of competent and properly

trained staff at the facility and that such problems had been jeopardizing resident care and would likely result in Decedent not receiving adequate care at the facility.

51.    SHY was misled in reliance on the state of facts known to her, and without knowledge of the concealed facts, trusted defendants and allowed Decedent to become, and remain, a resident at LA CASA and under defendants' and their agents, CABANSAG and LIN's care.

52.    Said concealment of material facts was committed by defendants, including through their management employees, administrators, executive directors, admissions employees, marketing employees, direct care staff and other employees acting in the scope and course of employment and with the knowledge, authority, approval and ratification of defendants, with the intention of defrauding the Decedent and SHY and of inducing SHY to allow the continued residency of Decedent while defendants continued to receive monies paid by or on behalf of Decedent.  It is further alleged on information and belief that defendants have knowledge of other individuals who, on behalf of and with the knowledge, authority, approval and ratification of defendants, participated in the concealment of material facts cited above.

53.    Had Decedent or SHY been advised of the concealed facts cited above regarding the staff and procedures inadequacies, that defendants were not and would not be observing Decedent; and that defendants did not have a system in place to check or monitor residents for care and did not have or follow policies and procedures to observe and monitor Decedent and comply with statutes and regulations designed to keep Decedent healthy and safe, arrangements would not have been made to admit or continue Decedent's residence at LA CASA.

54.    As a direct and legal result of the foregoing, plaintiff sustained damages in an amount according to proof at trial.

55.    Defendants realized a financial gain from their fraud, and accordingly, are required to disgorge those financial benefits gained by defendants, with interest thereon.

56.    Defendants acted with fraud, oppression and malice and an assessment of punitive damages in a sum according to proof at trial is warranted.

**COMPLAINT FOR DAMAGES**                           12

**FOURTH CAUSE OF ACTION FOR CONSTRUCTIVE FRAUD**

**(By Plaintiff Against Defendant)**

57.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39 inclusive, as though fully set forth herein.

58.     Defendants had a fiduciary, confidential and special relationship with plaintiff at all times referenced, and the duty to act in good faith for the benefit of the Decedent and to disclose all relevant material facts to the Decedent and to plaintiff.

59.     Defendants breached their duty of good faith and disclosure, as alleged above.

60.     As a direct and legal result of the foregoing plaintiff sustained damages in an amount according to proof at trial.

61.     Defendants realized a financial gain from their fraud, and accordingly, are required to disgorge those financial benefits gains by defendants, including interest, and an assessment of punitive damages in a sum sufficient to punish the defendants, according to proof at trial, is warranted.

**FIFTH CAUSE OF ACTION FOR WRONGFUL DEATH**

**(By Plaintiff Against Defendant)**

62.     Plaintiff hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 39 inclusive, as though fully set forth herein.

63.     Plaintiff is the mother and heir of the Decedent.

64.     By reason of the foregoing, and as a proximate result of the foregoing, the Decedent died on December 5, 2011.

65.     By reason of the untimely death of BATISTE, plaintiff has been permanently deprived of love, companionship, comfort, affection, society and solace in a sum according to proof at trial.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

1.     For general damages according to proof at the time of trial;

**COMPLAINT FOR DAMAGES**     13

2.      For medical and related expenses according to proof at the time of trial;

3.      For plaintiff's loss of support according to proof at the time of trial;

4.      For disgorgement of profits according to proof;

5.      For restitution according to proof;

6.      For funeral and burial expenses according to proof at the time of trial;

7.      For punitive and exemplary damages according to proof;

8.      For costs of suit incurred herein;

9.      For reasonable attorneys fees;

10.     For such other and further relief as this Court may deem just and proper.

Dated:     March 9, 2015                         BARANOV & WITTENBERG, LLP


                                       By:    /S/ Michael M. Baranov
                                              MICHAEL BARANOV, ESQ.
                                              Attorneys for Plaintiff, NANCY
                                              SHY, as an Individual and
                                              Successor in Interest to Decedent
                                              KUDURA BATISTE


## DEMAND FOR TRIAL BY JURY

Plaintiff demands that this case be tried by a jury.

Dated:     March 9, 2015                         BARANOV & WITTENBERG, LLP


                                       By:    /S/ Michael M. Baranov
                                              MICHAEL BARANOV, ESQ.
                                              Attorneys for Plaintiff, NANCY
                                              SHY, as an Individual and
                                              Successor in Interest to Decedent
                                              KUDURA BATISTE

**COMPLAINT FOR DAMAGES**                        14